OA 91 Criminal Complaint

# United States District Court

**FILED**
2010 MAR 10 P 1:54

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. DIST. SAN JOSE

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
DANIEL GARCIA

**CRIMINAL COMPLAINT**

SEALED BY ORDER
OF THE COURT

Case Number: 10-70191 PVT

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about February 12, 2010 in San Benito County, in the Northern District of California defendant(s) did,

(Track Statutory Language of Offense)

knowingly and intentionally conspire with other persons to distribute a controlled substance, to wit, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers,

in violation of Title 21 United States Code, Section(s) 846, 841(a)(1), and 841(b)(1)(A)(viii)

a. Maximum prison sentence - Life with 10-year mandatory minimum sentence
b. Maximum fine - $4,000,000
c. Maximum supervised release term - Life with 5-year minimum
d. Mandatory special assessment - $100

I further state that I am a(n) Special Agent of F.B.I. and that this complaint is based on the following facts:

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Approved As To Form: /s/ John N Glang
AUSA

Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

March 10, 2010
Date

at San Jose, CA
City and State

PATRICIA V. TRUMBULL, U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Judicial Officer

AFFIDAVIT OF DOUGLAS C. TURNER IN SUPPORT OF CRIMINAL COMPLAINT

I, Douglas C. Turner, Special Agent of the Federal Bureau of Investigation (FBI), Department of Justice, San Jose, California, being first duly sworn, depose and say:

## INTRODUCTION

This affidavit is made in support of a criminal complaint and arrest warrant for Daniel GARCIA, based upon his violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(viii).

The information contained in this affidavit is based upon my review of reports created by other law enforcement officials who conducted and/or participated in this investigation. Because this affidavit is for the limited purpose of setting forth probable cause, I have not included every fact known to me or developed during the course of this investigation.

## AGENT BACKGROUND

I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the San Francisco Division, San Jose Resident Agency, and have been so employed for approximately four years. Prior to my employment with the FBI, I was employed as a Special Agent of the United States Secret Service (USSS) for approximately six years where I was assigned to the Spokane Resident Office, Los Angeles Field Office, and the Presidential Protective Division. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, as well as execute arrest and search warrants as they pertain to federal criminal codes of the United States. I have participated in a wide variety of criminal investigations, to include those pertaining to violent crimes, illegal drug sales and distribution, as well as gang-related criminal activities.

## FACTS SUPPORTING PROBABLE CAUSE

During the months of November 2009 through February 2010, Task Force Agents (TFAs) of the Unified Narcotics Enforcement Team (UNET), a California State Department of Justice

1

Bureau of Narcotics (BNE) sponsored task force, through the use of a cooperating witness (CW), identified Daniel GARCIA as a local methamphetamine dealer residing and conducting illegal drug sales in Hollister (San Benito County), California.

On 11/03/2009, TFA John Pena contacted the CW who advised that a subject named Daniel GARCIA was selling methamphetamine from his residence at 266 Line Street, Hollister. On the same date, the CW contacted GARCIA and negotiated for the future purchase of two ounces of methamphetamine.

First Controlled Drug Purchase Conducted on 11/04/2009

On 11/04/2009, UNET TFA's and SA Douglas Turner, FBI, conducted a successful controlled purchase of two ounces of methamphetamine from GARCIA utilizing the CW. At approximately 12:30 p.m. on that date, TFA Pena and SA Turner met the CW at a pre-determined location. At approximately 12:50 p.m., the CW contacted GARCIA regarding the previously discussed purchase of two ounces of methamphetamine. GARCIA advised that he was on his way to Hollister, but was stuck in traffic. At approximately 1:40 p.m., the CW again contacted GARCIA, who stated that he was "getting the dope ready." The CW and his/her vehicle were searched for contraband and money and none was found. He/she was then provided $2,470 in cash in order to conduct the purchase.

At approximately 1:50 p.m., the CW, while under surveillance, drove to the scheduled meet location which was anticipated to be in the vicinity of Beresini Drive, Hollister. While en route to the location, the CW contacted TFA Pena, advising that GARCIA changed the meet location to the intersection of Line Street and Central Avenue, Hollister.

At approximately 1:58 p.m., the CW was observed parking in the vicinity of Line Street and Central Avenue. At approximately 2:00 p.m., a white utility truck parked across the street from the CW. An unidentified Hispanic male (UNSUB 1), exited the passenger side of the truck and met with the CW on the driver's side of the CW's window. UNSUB 1 was then observed

2

1  running back to and entering the truck. The truck was then observed departing eastbound on
2  Central Avenue.
3      TFA Pena and SA Turner subsequently followed the CW to a pre-determined location
4  where the CW provided the agents with a baggie which contained suspected methamphetamine.
5  The baggie was wrapped in a vehicle oil change receipt bearing GARCIA's name on it. The CW
6  and his/her vehicle were then searched for contraband and money; none was found. During the
7  subsequent debrief, the CW stated that GARCIA was driving the aforementioned truck. UNSUB
8  1, who the CW stated he/she did not know, delivered the methamphetamine to the CW; the CW
9  then provided the funds to UNSUB 1. According to the CW, GARCIA "yelled" to the CW to
10 call him if he/she needed more (drugs).
11     TFAs later displayed a known photograph of Daniel GARCIA, Date of Birth 11-23-1974,
12 California Driver's License # A8096257, to the CW who positively identified him as the person
13 she spoke to on the phone on November 3 and November 4, 2009 and who participated in the
14 above-described drug transaction. This photograph was also displayed to TFAs who participated
15 in the surveillance of the above-described meeting and of future meetings between the CW and
16 GARCIA that are described below and the TFAs positively identified GARCIA as being the
17 person they observed during said surveillances and meetings.
18     The DEA Laboratory later determined that the net weight of the drugs GARCIA sold to
19 the CW on November 4, 2009 was 54.4 grams and that they contained methamphetamine that
20 was 89.5% pure, for a total of 48.6 grams of methamphetamine (actual).
21     <u>Second Controlled Drug Purchase Conducted on 11/13/2009</u>
22     On 11/13/2009, UNET TFA's and SA Douglas Turner, FBI, conducted a successful controlled
23 purchase of approximately 1 ½ ounces of methamphetamine from GARCIA utilizing the CW.
24 At approximately 3:05 p.m. on that date, the CW placed a call to GARCIA, which was monitored
25 by SA Turner via "three-way calling," asking for "two," referring to two ounces of
26 methamphetamine. GARCIA stated that it would cost $2,450. At approximately 3:33 p.m., the
27
28                                                     3

CW placed another phone call to GARCIA which was monitored by SA Turner via "three-way calling," who advised that he needed to hold on to some of the drugs and could only provide 1 ½ ounces instead of two to the CW. GARCIA further advised that it would cost $1,800.

At approximately 4:34 p.m., TFA Pena and SA Turner met the CW at a pre-determined location. At approximately 4:40 p.m., a consensually recorded phone call was made to GARCIA by the CW. GARCIA confirmed a price of $1,850 for the drugs. GARCIA added that he may be able to obtain more methamphetamine later that day. At this point, the CW and his/her vehicle were searched for contraband and money and none was found. He/she was then provided $1,850 in cash in order to conduct the purchase. The CW was also fitted with a monitoring and recording device.

At approximately 4:47 p.m., a consensually recorded phone call was made to GARCIA by the CW. GARCIA and the CW agreed to meet in an area later determined to be in the vicinity of Buena Vista Road. At approximately 4:56 p.m., the CW, while under surveillance, began to drive to the scheduled meet location. While en route to the location, the CW contacted SA Turner advising that GARCIA changed the meet location to the intersection of Line and Second Street, Hollister.

At approximately 5:10 p.m., the CW was observed by TFAs parking in the vicinity of Line and Second Street. At approximately 5:12 p.m., a red convertible later identified as being registered to GARCIA, arrived and parked next to the CW's vehicle. At approximately 5:13 p.m., the convertible departed the location and was observed arriving at 266 Line Street, Hollister.

At approximately 5:14 p.m., TFA Pena and SA Turner followed the CW to a pre-determined location where the CW provided the agents with a baggie which contained suspected methamphetamine. The aforementioned monitoring and recording devices were retrieved from the CW. The CW and his/her vehicle were searched for contraband and money and none was found. During the subsequent debrief, the CW stated that GARCIA, who drove the vehicle, did

4

not approach his/her vehicle. The CW advised that UNSUB 1 brought the drugs to his/her car and retrieved the money for the purchase.

The DEA Laboratory later determined that the net weight of the drugs GARCIA sold to the CW on November 13, 2009 was 41.6 grams and that they contained methamphetamine that was 75.6% pure, for a total of 31.4 grams of methamphetamine (actual).

Third Controlled Drug Purchase Conducted on 1/14/2010

On 1/13/2010, a consensually recorded phone call was made to GARCIA by the CW. The CW asked for "one," referring to one ounce of methamphetamine, for the following day (1/14/2010). GARCIA responded by asking the CW if he/she wanted a "28 year old or a 3 and a half year old," referring to 28 grams and 3.5 grams of methamphetamine. The CW confirmed 28 grams. GARCIA stated that it would be no problem and that he (GARCIA) would be around all day the following day. The CW, in a subsequent phone call, confirmed with GARCIA that the price would be $1,180.

On 1/14/2010, UNET TFA's and FBI SA Douglas Turner conducted a successful controlled purchase of approximately one ounce of methamphetamine from GARCIA utilizing the CW. At approximately 1:30 p.m. on that date, TFA Mike Mull and SA Turner met the CW at a pre-determined location. At approximately 1:35 p.m., the CW contacted GARCIA who advised him/her to meet at the "Hollister Super" market located at 1280 San Juan-Hollister Road in Hollister. The CW and his/her vehicle were searched for contraband and money and none was found. He/she was then provided $1,180 in cash to conduct the purchase. The CW was also fitted with monitoring and recording devices.

At approximately 1:40 p.m., the CW, while under surveillance, began to drive to the scheduled meet location. While en route to the location, the CW contacted TFA Mull and SA Turner and advised that GARCIA changed the meet location to Gonzalez Drive in Hollister. At approximately 1:56 p.m., the CW was observed parking at Gonzalez Drive off of Central Avenue. A mini-van being driven by GARCIA was then observed parking behind the CW. The

5

CW was observed following the mini-van and both vehicles were subsequently observed parking in the vicinity of Beresini Lane and Marguerite Drive.

At approximately 2:03 p.m., the mini-van was observed departing Beresini Lane and subsequently parked across the street from 41 Vista Lane.

At approximately 2:15 p.m., TFA Mull and SA Turner met the CW at a pre-determined location where the CW provided the agents with a baggie which contained suspected methamphetamine. The aforementioned monitoring and recording devices were retrieved from the CW. The CW and his/her vehicle were searched for contraband and money and none was found. During the subsequent debrief, the CW stated thatt when he/she arrived at Gonzalez Drive, GARCIA telephoned him/her to follow him. The CW stated that when they arrived at Beresini Lane, GARCIA exited the vehicle and approached the CW on the driver's side of the CW's vehicle. According to the CW, GARCIA then handed him/her the methamphetamine and the CW paid the $1,180 cash to GARCIA. The CW stated that they then both drove away.

TFA Mull, utilizing a digital scale, determined the gross weight of the suspected methamphetamine to be 29.05 grams. A Narcotics Identification Kit (NIK) presumptive test was performed on a trace amount of the purchased substance which tested positive for the presence of methamphetamine.

Fourth Controlled Drug Purchase Conducted on 2/04/2010

On 2/04/2010, UNET TFA's and FBI SA Douglas Turner conducted a successful controlled purchase of approximately one ounce of methamphetamine from GARCIA utilizing the CW. At approximately 11:45 a.m. on that date, TFA Mull and SA Turner met the CW at a pre-determined location. At approximately 11:50 a.m., the CW made a consensually recorded phone call to GARCIA. GARCIA advised the CW to meet him at the San Benito County Health Foundation, 351 Felice Drive, Hollister. The CW and his/her vehicle were searched for contraband and money and none was found. He/she was then provided $1,150 in cash to conduct the purchase. The CW was also fitted with a monitoring device.

At approximately 12:00 p.m., the CW, while under surveillance, drove to the scheduled meet location. Surveillance was also posted at 41 Vista Lane, Hollister, an address where GARCIA was believed to be currently residing. GARCIA was observed by TFAs departing the residence in the aforementioned red convertible during the same approximate time frame that the CW spoke with GARCIA (11:50 a.m.) GARCIA subsequently returned to the residence a few minutes later.

Upon the CW's arrival at the scheduled meet location, a then-unidentified male was observed briefly meeting with the CW and then depart the location. In a subsequent phone call made to the CW, he/she stated that the transaction was just completed by the same unidentified male (UNSUB 1) who he/she met during the first drug buy on 11/04/2009. The CW further advised that UNSUB 1 was the passenger in a white cargo-type truck being driven by another unidentified subject (UNSUB 2).

At approximately 12:19 p.m., a white cargo-type truck was observed arriving at 41 Vista Lane, Hollister. An individual matching the description of UNSUB 1 was observed exiting the vehicle and meeting GARCIA in the driveway. The two men then entered the residence.

At approximately 12:26 p.m., TFA Mull and SA Turner met the CW at a pre-determined location where the CW provided the agents with suspected methamphetamine which was inside a white plastic grocery bag. The aforementioned monitoring and recording devices were retrieved from the CW. The CW and his/her vehicle were searched for contraband and money and none was found. During the subsequent debrief, the CW confirmed that the transaction was completed by the same unidentified male (UNSUB 1) who he/she met during the first drug buy conducted on 11/04/2009. According to the CW, UNSUB 1 approached his/her vehicle from the passenger side of the CW's vehicle and provided the drugs to him/her through the window. The CW then provided the money to UNSUB 1. UNSUB 1 then returned to the passenger side of the cargo truck and all three individuals then left the location.

TFA Mull, utilizing a digital scale, determined the gross weight of the suspected methamphetamine to be 28.51 grams. A Narcotics Identification Kit (NIK) presumptive test was performed on a trace amount of the purchased substance which tested positive for the presence of methamphetamine.

Fifth Controlled Drug Purchase Conducted on 2/12/2010

On 2/12/2010, UNET TFA's conducted a successful controlled purchase of approximately one ounce of methamphetamine from GARCIA utilizing the CW. At approximately 10:45 a.m. that date, TFAs Mull and Jurevich met the CW at a pre-determined location. At approximately 11:00 a.m., the CW made a consensually recorded phone call to GARCIA to facilitate the purchase. The CW and GARCIA agreed to meet at the aforementioned "Hollister Super" market. The CW and his/her vehicle were searched for contraband and money and none was found. He/she was then provided $1,160 in cash to conduct the purchase. The CW was also fitted with a monitoring and recording device.

At approximately 11:10 p.m., the CW, while under surveillance, began to drive to the scheduled meet location. While en route, it was decided by TFAs to move the meet location to the parking lot of the True Value Hardware Store for purposes of surveillance.

At approximately 11:22 a.m., the CW arrived at the meet location. He/she subsequently advised GARCIA by phone of the change in the meet location. At approximately 11:26 a.m., UNSUB 1 was observed arriving at the meet location in the same mini-van that was driven by GARCIA during the 1/14/2010 controlled drug purchase. The CW exited his/her vehicle and approached the mini-van. During the monitored conversation, the CW was overheard asking UNSUB 1 where GARCIA was, to which UNSUB 1 replied "at work," or words to that effect.

At approximately 11:33 a.m., TFAs Mull and Jurevich followed the CW to a pre-determined location where the CW provided the agents with a Dixie cup which contained a baggie with suspected methamphetamine. The CW and his/her vehicle were searched for contraband and money and none was found. According to the CW, UNSUB 1 told him/her that GARCIA was at

8

work. UNSUB 1 placed the methamphetamine on the passenger seat of the mini-van. The CW stated he/she took possession of the methamphetamine and paid UNSUB 1 $1,160 cash.

TFA Mull, utilizing a digital scale, determined the gross weight of the suspected methamphetamine to be 29.11 grams. A Narcotics Identification Kit (NIK) presumptive test was performed on a trace amount of the purchased substance which tested positive for the presence of methamphetamine.

## CONCLUSION

Based on the aforementioned facts, I believe that there is probable cause to believe that Daniel GARCIA is guilty of the offense of conspiracy to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(viii). Accordingly, the government requests that a no-bail arrest warrant be issued for GARCIA and that this affidavit, the complaint, and the warrant be sealed pending further order of the court.

DOUGLAS C. TURNER
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this
___10___ day of March 2010

PATRICIA V. TRUMBULL
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF CALIFORNIA